1  Richard G. Himelrick (004738)
   **TIFFANY & BOSCO, P.A.**
2  Seventh Floor Camelback Esplanade II
   2525 East Camelback Road
3  Phoenix, AZ 85016
   Telephone: (602) 255-6000
4  Facsimile: (602) 255-0103
   E-mail: rgh@tblaw.com
5
   Lionel Z. Glancy
6  Robert V. Prongay
   Leanne Heine Solish
7  Elaine Chang
   **GLANCY PRONGAY & MURRAY LLP**
8  1925 Century Park East, Suite 2100
   Los Angeles, California 90067
9  Telephone: (310) 201-9150
   Facsimile: (310) 201-9160
10
   *Attorneys for Lead Plaintiff Hongwei Li*
11
                    UNITED STATES DISTRICT COURT
12
                        DISTRICT OF ARIZONA
13

14
15  Derick Larson,                          Lead Case No. CV-14-01043-GMS
                                            Consolidated with:
            Plaintiff,                      No. CV-14-01077-GMS
16
            v.                              **MOTION FOR FINAL APPROVAL OF**
17                                          **THE SETTLEMENT, CLASS**
   Insys Therapeutics Incorporated, et al., **CERTIFICATION AND PLAN OF**
18                                          **ALLOCATION; MEMORANDUM OF**
            Defendants.                     **POINTS AND AUTHORITIES IN**
19                                          **SUPPORT THEREOF**
20

21  Hongwei Li,
22          Lead Plaintiff,
23          v.
24  Insys Therapeutics Incorporated, et al.,
            Defendants.
25

26
27
28
        MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF
         ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................. 1

II.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE
        SETTLEMENT ................................................................................... 2

A.     Applicable Standards for Final Approval of Class Action  Settlements ................. 2

B.     The Settlement Is Fair, Reasonable, and Adequate .................................................. 3

        1.     The Overall Strength of Lead Plaintiff's Case, Including the Risk,
               Expense, Complexity, and Likely Duration of Further Litigation,
               Supports Final Approval of the Settlement ........................................ 4

               a.     PSLRA Cases Have Significant Obstacles to Success............ 4

                      i.      The Risk of Establishing Scienter ............................... 5

                      ii.     The Risk of Proving Loss Causation and Damages ..... 6

               b.     Continued Litigation Would Be Risky and Expensive .......... 7

        2.     The Risks of Achieving Class Action Status and Maintaining
               That Status Throughout Trial Support Approval of the Settlement... 8

        3.     The Amount Offered to Settle the Action Represents a Significant
               Portion of Provable Damages ............................................................ 9

        4.     The Amount of Discovery Completed and the Stage of the
               Proceedings Support Approval of the Settlement ........................... 10

        5.     Experienced Counsel Concur that the Settlement, Which Was
               Negotiated in Good Faith and at Arm's-Length, Is Fair,
               Reasonable, and Adequate ............................................................... 11

        6.     The Class Members' Reaction Supports Approval of the
               Settlement ........................................................................................ 12

III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS ...................... 12

    A.   Certification Standards Generally ................................................. 13

    B.   The Settlement Class Satisfies the Requirements of Rule 23(a) ................ 13

        1.   Numerosity ........................................................................ 13

        2.   Commonality ...................................................................... 13

        3.   Typicality .......................................................................... 14

        4.   Adequacy .......................................................................... 14

    C.   The Settlement Class Satisfies the Requirements of Rule 23(b)(3) Because Common Questions Predominate ................................... 15

IV.   The Plan of Allocation Fairly and Adequately Apportions the Settlement Fund Among Class Members and Thus Should Be Approved .............................. 16

V.   Notice to the Settlement Class Complied with Due Process ................................. 17

VI.   CONCLUSION ............................................................................. 17

1

**<u>TABLE OF AUTHORITIES</u>**

2

3 Cases

4 *Ahdoot v. Babolat VS N. Am.*,
5     No. 13-02823-VAP VBKX, 2015 WL 1540784 (C.D. Cal. Apr. 6, 2015) ...................... 3

6 *Amchem Prods., Inc. v. Windsor*,
7     521 U.S. 591 (1997)................................................................................................. 13, 15

8 *Basic, Inc. v. Levinson*,
     485 U.S. 224 (1988).......................................................................................................... 8
9

10 *Class Plaintiffs v. City of Seattle*,
     955 F.2d 1268 (9th Cir. 1992) ............................................................................... 2, 4, 16
11

12 *Eisen v. Carlisle & Jacquelin*,
     417 U.S. 156 (1974)........................................................................................................ 17
13

14 *Ellis v. Naval Air Rework Facility*,
     87 F.R.D. 15 (N.D. Cal. Feb. 7, 1980) ........................................................................... 11
15

16 *Evans v. Jeff D.*,
     475 U.S. 717 (1986).......................................................................................................... 2
17

18 *Hanlon v. Chrysler Corp.*,
     150 F.3d 1011 (9th Cir. 1998) ............................................................................... 2, 3, 12
19

20 *Hartless v. Clorox Co.*,
     273 F.R.D. 630 (S.D. Cal. 2011) .................................................................................... 15
21

22 *Hubbard v. BankAtlantic Bancorp, Inc.*,
     688 F.3d 713 (11th Cir. 2012) .......................................................................................... 6
23

     *In re Apollo Grp. Inc. Sec. Litig.*,
24     CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................... 12

25 *In re Cendant Corp. Litig.*,
     264 F.3d 201 (3d Cir. 2001) ............................................................................................. 9
26

27 *In re Heritage Bond Litig.*,
     No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005)..................... passim

28

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................... 11, 12

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................................... 2, 4

*In re MicroStrategy, Inc. Sec. Litig.*,
   148 F. Supp. 2d 654 (E.D. Va. 2001) ........................................................... 16

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ..................................................................... 17

*In re OmniVision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................. passim

*In re Oracle Sec. Litig.*,
   No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ............... 16

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
   148 F.3d 283 (3d Cir. 1998) ........................................................................ 10

*In re Scientific Atlanta, Inc. Sec. Litig.*,
   754 F. Supp. 2d 1339 (N.D. Ga. 2010) .......................................................... 6

*In re Syncor ERISA Litig.*,
   516 F.3d at 1101 .......................................................................................... 8

*In re THQ, Inc., Sec. Litig.*,
   No. 00-1783AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ......... 13

*In re Warfarin Sodium Antitrust Litig.*,
   391 F.3d 516 (3d Cir. 2004) ........................................................................ 10

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y. 1985), ............................................................... 6

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989) ............................................................ 4, 5

*Jenson v. Fiserv Trust Co.*,
   256 F. App'x 924 (9th Cir. 2007) .................................................................. 8

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ................................................................ 2, 3

*Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................................ 8

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .......................................................... 2, 3, 4

*Peters v. Nat'l R.R. Passenger Corp.*,
   966 F.2d 1483 (D.C. Cir. 1992) ............................................................... 17

*Riker v. Gibbons*,
   No. 3:08-CV-00115-LRH, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) .................. 11, 16

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010) ............................................................................ 15

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................. 2, 3

*Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*,
   173 F.3d 713 (9th Cir. 1999) .................................................................. 8

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ..................................................................... 8, 13

*Yamner v. Boich*,
   No. C-92-20597 RPA, 1994 WL 514035 (N.D. Cal. Sept. 15, 1994) .................... 13, 16

Rules

Fed. R. Civil Procedure 23 ............................................................... passim

Statutes

15 U.S.C. §78u-4 .............................................................................. 4

15 U.S.C.§78t ................................................................................. 5

1    Lead Plaintiff Hongwei Li ("Lead Plaintiff") respectfully moves this Court for the entry

2  of an order and judgment: (i) granting final approval of the proposed Settlement[1] and Plan of

3  Allocation, which the Court preliminarily approved on June 3, 2015 (Dkt. No. 67); (ii) finally

4  certifying the proposed Class for purposes of the Settlement; (iii) finding that notice to the

5  Settlement Class satisfied due process; and (iv) entering the proposed Judgment and Order of

6  Dismissal with Prejudice of this Action. This motion is accompanied by a separate motion

7  asking that the Court make an award of fees and expenses if the Settlement is approved.

8                          **MEMORANDUM OF POINTS AND AUTHORITIES**

9  **I.    INTRODUCTION**

10    Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff hereby

11  submits this memorandum in support of final approval of the settlement of this action.[2] As set

12  forth herein and in the Glancy Declaration, the Settlement[3] was reached after an extensive

13  investigation conducted by Lead Counsel; drafting an initial complaint (Dkt. No. 1) and a

14  consolidated Amended Class Action Complaint (Dkt. No. 41); researching and drafting an

15  opposition to Defendants' motion to dismiss and request for judicial notice (Dkt. Nos. 56-57);

16  researching and drafting opening and response mediation statements; and engaging in arm's

17  length settlement negotiations under the supervision of a mediator. *See* Glancy Decl., ¶¶13-14,

18  16, 31-34, 36, 42.

19    In furtherance of the Settlement, Defendants have caused to be paid $6.125 million in

20  cash into an interest-bearing escrow account for the benefit of the Settlement Class, in

21  exchange for the dismissal and full release of all claims brought against them. Defendants

22  deny any wrongdoing or liability in all respects and admit nothing as part of the Settlement.

---

23  [1] Unless otherwise defined, capitalized terms herein have the same meaning as the Stipulation

24  of Settlement dated May 28, 2015 (the "Stipulation"). Docket Entry ("Dkt.") No. 66.

25  [2] This memorandum focuses primarily upon the legal standards for approval of a class action

26  settlement under Fed. R. Civ. P. 23(e). For a more complete factual recitation of the Litigation and Settlement than set forth herein, Lead Counsel respectfully refers the Court to the Declaration of Lionel Z. Glancy ("Glancy Decl."), filed concurrently herewith.

27  [3] Defendants include Insys Therapeutics, Inc. ("Insys" or the "Company"), Michael L. Babich,

28  Darryl S. Baker, John N. Kapoor, Ph.D., and Larry M. Dillaha, M.D.

The merits of the Settlement are demonstrated by, *inter alia*: the significant recovery – $6.125 million in cash – approximately 10.02% of Lead Plaintiff's maximum estimated damages of $61.1 million; the significant risk of continuing litigation; and the time and expense required to prosecute the case to a final judgment and through any ensuing appeals, the outcome of which is uncertain. Having attained a thorough understanding of the strengths and weaknesses of the Settlement Class's claims, Lead Plaintiff and Lead Counsel are confident that the Settlement is fair, reasonable, and provides an excellent recovery. *See also* Declaration of Mediator Jill R. Sperber, Esq. ("Sperber Decl."), ¶11.

Lead Plaintiff respectfully requests that the Court grant final approval of the Settlement and the Plan of Allocation, finally certify the Settlement Class, and enter the proposed Final Judgment and Order of Dismissal with Prejudice for this action as filed on May 28, 2015. Dkt. No. 66, at Exhibit ("Ex.") A, and filed concurrently herewith.

## II.     THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT

### A.     Applicable Standards for Final Approval of Class Action   Settlements

In deciding whether to approve a proposed settlement pursuant to Federal Rule of Civil Procedure 23(e), the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)[4]; *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). There is no prescribed settlement approval procedure to be followed in this Circuit. Rather, it is within the "sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998). Ultimately, "[a] settlement should be approved if it is 'fundamentally fair, adequate and reasonable.'" *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *see also Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of San Francisco*,

---

[4] Unless otherwise indicated, all internal citations and quotations are omitted.

688 F.2d 615, 625 (9th Cir. 1982). Indeed, in making its assessment:

> the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625).

Consequently, a settlement hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the proposed settlement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625. To the contrary, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Ahdoot v. Babolat VS N. Am., Inc.*, No. 13-02823-VAP VBKX, 2015 WL 1540784, at *6 (C.D. Cal. Apr. 6, 2015). The Settlement herein was reached only after hard-fought litigation between experienced counsel on both sides, and it is the product of arm's-length negotiations. Under such circumstances, Lead Plaintiff respectfully submits that the Settlement should be afforded the presumption of fairness and that final approval should be granted.

### B.      The Settlement Is Fair, Reasonable, and Adequate

To determine whether a proposed settlement is fair, reasonable, and adequate, a court may consider balancing "some or all" of the following factors: (1) the strength of the plaintiffs' case, including the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action status through trial; (3) the amount offered in settlement; (4) the extent of discovery completed and the stage of the proceedings; (5) the experience and views of counsel; (6) the presence of a governmental participant; and (7) the reaction of the class members to the proposed settlement. *Linney*, 151 F.3d at 1242; *Hanlon*, 150 F.3d at 1026; *Torrisi*, 8 F.3d at 1375. This list is not exclusive and different factors may predominate in different factual contexts. *Torrisi*, 8 F.3d at 1376. Lead Plaintiff recognizes that these factors should be thoroughly explored where, as here, a settlement is reached prior

to formal class certification. *Mego*, 213 F.3d at 458. As set forth below, an analysis of each of these factors demonstrates that the Settlement is fair, adequate, and reasonable.

### 1. The Overall Strength of Lead Plaintiff's Case, Including the Risk, Expense, Complexity, and Likely Duration of Further Litigation, Supports Final Approval of the Settlement

In considering the strength of Lead Plaintiff's case, the assessment is not intended to involve any ultimate conclusions regarding the contested issues of fact and law that underlie the merits of the litigation. *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1388 (D. Ariz. 1989) *aff'd sub nom. City of Seattle*, 955 F.2d 1268 (citing *Officers for Justice*, 688 F.2d at 625). Lead Counsel, who have significant experience litigating and resolving complex securities class actions, carefully evaluated the merits of this case, in light of all of the risks and potential weaknesses, before Lead Plaintiff entered into the Settlement. Lead Counsel conducted a thorough investigation of the claims in this action, and consulted with a damages expert to determine the statistical significance of the alleged disclosures, estimate damages, and formulate the Plan of Allocation. Glancy Decl., ¶¶42,47-49, 53-64, 69; §II.B.4, *infra.*

While Lead Plaintiff and Lead Counsel believe that the case is strong based on the substantial research and investigation conducted, they are cognizant of the substantial risk posed to the Settlement Class in continuing this Litigation, namely, that the case might not be certified, or that the Litigation might succumb at the motion to dismiss or summary judgment stage to attacks regarding loss causation, scienter, liability, or damages. *See In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *7 (C.D. Cal. June 10, 2005) ("It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is often misplaced"); *Omnivision*, 559 F. Supp. 2d at 1041.

### a. PSLRA Cases Have Significant Obstacles to Success

A heightened level of risk existed in this Litigation because the claims are subject to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, which makes it more difficult for investors to successfully prosecute securities actions. The §§10(b)

1   and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") claims in this action

2   were brought on the theory that while Defendants told investors that Subsys's blockbuster

3   sales were due to the hard work of their sales force and Subsys's adoption among opiate-

4   tolerant patients experiencing breakthrough cancer pain ("BTCP"), Defendants secretly

5   engaged in improper sales practices, including offering kickbacks to doctors for prescribing

6   off-label and lying to insurance providers. Glancy Decl., ¶¶17-18. To succeed on the §10(b)

7   claim, Lead Plaintiff would have to prove that Defendants knowingly, or with deliberate

8   recklessness, issued materially false and misleading statements and omissions of fact

9   regarding their sales practices, and that Class Members relied upon Defendants' misconduct

10   (*e.g.*, proof of an efficient market for Insys stock), and were damaged when the truth was

11   revealed. *Id.* at ¶¶57-61. Each element of the claim has been hotly contested or would likely

12   be contested during the Litigation.[5]

13                                 **i.    The Risk of Establishing Scienter**

14          Obtaining a favorable jury finding on the element of scienter – *i.e.* fraudulent intent –

15   is hardly a foregone conclusion. Indeed, "[t]he legal requirements associated with proof of

16   this mental state are exceedingly stringent and laden with peril." *Washington Pub.*, 720 F.

17   Supp. at 1388. Lead Plaintiff would have to demonstrate that Defendants engaged in

18   improper marketing practices and falsely attributed Subsys's success to hard work of its sales

19   force and product benefits with deliberate recklessness or with knowledge that investors

20   could be deceived. As indicated above and outlined in the Glancy Declaration, proving that

21   each Defendant acted with scienter would have been a significant challenge.

22          While Lead Plaintiff certainly believes that his arguments and evidence support the

23   §10(b) claims, establishing scienter at trial would be by no means guaranteed – and would

24   only be an issue after surviving Defendants' motion to dismiss and Defendants' subsequent

25   _____

26   [5] Under §20(a) of the Exchange Act, every person who controls any person liable under
     §10(b) shall be jointly and severally liable with the primary violator unless the control person
     acted in good faith and did not directly or indirectly cause the violation. 15 U.S.C.§78t. If

27   the §10(b) claim failed, there would be no predicate violation for the §20(a) claim. Defendants
     also disputed the merits of the §20A claim.

28

motion for summary judgment. *See Heritage Bond*, 2005 WL 1594403, at *7. The Court has not yet ruled that the Amended Complaint adequately alleged that Defendants acted with a strong inference of scienter, and Lead Plaintiff and Lead Counsel are aware of the challenges of actually proving it at trial. Indeed, Defendants have steadfastly denied making any false statements or acting with scienter. As their motion to dismiss argues at length, Defendants insist, *inter alia*, that the confidential witness accounts failed to create a strong inference of scienter and that the allegations fail to establish scienter with respect to the individual defendants. *See* Dkt. No. 49 at 17-23. It is plausible that a jury could believe Defendants.

### ii. The Risk of Proving Loss Causation and Damages

Proving that the misstatements caused a significant loss for investors, and that the Settlement Class suffered damages as a result of Defendants' misconduct, also poses a significant challenge. Determining the amount of losses or that the multiple disclosures alleged actually caused the declines in Insys's stock would require complicated expert testimony and use of methodologies that are debated among economists. Glancy Decl., ¶¶59-60. Defendants would have presented their own expert testimony to demonstrate that the alleged stock drops were not the proximate cause of the revelation of the fraud, or that a portion of the alleged stock drops were attributable to things unrelated to the fraud or general market movement. *Id*. This would create a "'battle of experts,' [in which] it is virtually impossible to predict with any certainty which testimony would be credited, and ultimately, which damages would be found to have been caused by actionable, rather than the myriad nonactionable factors such as general market conditions." *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 744-45 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986). As such, vigorous challenges to loss causation and damages pose a significant risk at summary judgment, trial, and on appeal. *See Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713, 716 (11th Cir. 2012) (jury verdict in §10(b) action reversed due to failure to prove loss causation); *In re Scientific Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment on loss causation grounds for failure to disentangle the fraud-related and non-fraud-related portions of the stock decline).

### b.    Continued Litigation Would Be Risky and Expensive

Regardless of the ultimate outcome, there is no question that further litigation would be expensive and complex. The claims at the heart of this case involved allegations of improper marketing practices involving FDA and HIPAA violations, and involve thousands of third-parties across the country, including physicians and their staff. Glancy Decl., ¶¶17-18. For class certification, Lead Plaintiff (and Defendants) would have had to procure an expert's declaration on the issue of market efficiency. In addition to full motion briefing, documents would have been produced and expert depositions would have been taken.

With respect to discovery, Lead Counsel would anticipate, given the complexities of the issues in this Litigation, reviewing thousands of additional documents and taking numerous depositions of Defendants, Insys employees, physicians, and their staff. Following the close of merits discovery, the Parties would engage in expert discovery to prove (and in the case of Defendants, discredit) loss causation and damages. Consequently, as explained here and in §II.B.1.a, *supra*, expert discovery and trial preparation would be very expensive and complex. *See Heritage*, 2005 WL 1594403, at *6 (noting that class actions have a well-deserved reputation as being the most complex).

Accordingly, the likely duration and expense of further litigation supports a finding that the Settlement is fair, reasonable, and adequate. Even if a class were certified and the Complaint survived Defendants' motion to dismiss and likely motion for summary judgment, continued prosecution of the action would be complex, expensive, and lengthy with a more favorable outcome highly uncertain. After trial, any appeal would have to be resolved by the Ninth Circuit, one of the busiest circuit courts in the nation. Thus, the present value of a certain recovery at this time, as opposed to the mere chance for a greater one down the road, supports approval of a settlement that eliminates the expense and delay of continued litigation, and the risk that the Settlement Class receive no recovery. *See* Sperber Decl. ¶10.

At this point, well over a year into the Litigation, Lead Plaintiff is aware of the strengths and weakness of this case. Therefore, despite the perceived strength of Lead Plaintiff's case, the risk, expense, complexity, and likely duration of further litigation clearly

support approval of the Settlement. *See In re Syncor ERISA Litig.*, 516 F.3d at 1101; *Nat'l Rural Telecomms. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

> ## 2. The Risks of Achieving Class Action Status and Maintaining That Status Throughout Trial Support Approval of the Settlement

The Settlement Class has been preliminarily certified for settlement purposes only. Dkt. No. 67. If not for this Settlement, Defendants likely would have strongly contested any motion for class certification and sought every opportunity to have a certified class de-certified. *See Omnivision*, 559 F. Supp. 2d at 1041 (noting that even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").[6]

In any securities fraud class action, the plaintiff faces significant challenges to certifying a class and maintaining certification throughout trial. Pursuant to *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), to obtain class certification, Lead Plaintiff would need to prove that Insys's shares traded in an efficient market during the Class Period, such that new, material information was rapidly incorporated into Insys's stock price. If Insys's stock price reflected Defendants' misstatements, purchasing shares at market price would be considered a proxy for actual reliance, and that element of the claim could be proved class-wide.

In connection with the question of class-wide reliance, Lead Plaintiff would have had to engage an economist to conduct an event study to demonstrate Insys's securities' reaction to the release of material information. Defendants likely would have contested that the market for Insys stock was efficient, presented expert testimony of their own in support of their

---

[6] Defendants could petition for an immediate interlocutory appeal pursuant to Fed. R. Civ. P. 23(f). *See Jenson v. Fiserv Trust Co.*, 256 F. App'x 924 (9th Cir. 2007). Fed. R. Civ. P. 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." *See, e.g.*, *Vizcaino v. U.S. Dist. Court for W. Dist. of Washington*, 173 F.3d 713, 721 (9th Cir. 1999). Thus, maintaining certification is an expensive and risky enterprise. *E.g.*, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) (reversing certification order obtained in 2004 and affirmed by a Ninth Circuit panel in 2007 and *en banc* in 2009).

opposition to class certification, and may have even moved to strike the testimony of Lead Plaintiff's expert. While Lead Plaintiff and Lead Counsel believe that non-settlement class certification would be appropriate in this case, and while conditional certification was granted by the Court in conjunction with preliminary approval of the Settlement, certification of the Litigation through trial cannot be guaranteed. Accordingly, the risks of certifying the action and maintaining the Class throughout the litigation support approval of the Settlement.

### 3. The Amount Offered to Settle the Action Represents a Significant Portion of Provable Damages

The Settlement value, totaling $6.125 million in cash, plus interest, constitutes 10.02% of Lead Plaintiff's maximum estimated damages of $61.1 million, and provides a very fair and reasonable recovery under the circumstances. Glancy Decl., ¶¶9, 43-44; Sperber Decl., ¶10. Indeed, settlements valued at a substantially similar or much lower percentage of possible damages are routinely approved. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 241 (3d Cir. 2001) (noting that typical recoveries in securities class actions range from 1.6% to 14% of total losses); *Omnivision*, 559 F. Supp. 2d at 1042 (approving settlement amount of 9% of maximum potential damages); Glancy Decl., Ex. 4 at 9 (Cornerstone Research study reviewing securities class action settlements reported for the years 2005-2014, finding that where, as here, estimated damages were $50 million to $124 million, the median settlement was 3.0% of damages – with that figure only slightly higher at 5.0% in 2014).

Moreover, the estimated recovery of 10.02% of potential Class Period damages does not take into account the various defenses put forth by Defendants. If a jury were to credit Defendants' damages and loss causation experts over Lead Plaintiff's experts, in whole or in part, with respect to whether a significant portion of either or both of the alleged share price declines were causally related to Defendants' alleged misrepresentations and omissions, damages could substantially be reduced or eliminated. *See, e.g.*, *Heritage*, 2005 WL 1594403, at *7 (noting instances where a settlement was rejected by a court only to have the ultimate recovery generated by continued litigation be less than the proposed settlement).

When compared with the "present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing," the proposed Settlement is even more valuable. *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 538 (3d Cir. 2004). Where "the trial of this class action would be a long, arduous process requiring great expenditures of time and money on behalf of both the parties and the court," the recovery of a substantial sum certain today, weighs in favor of the Settlement. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998); *Omnivision,* 559 F. Supp. 2d at 1042 ("[T]he Settlement, which offers an immediate and certain award for a large number of potential class members, appears a much better option").

### 4.     The Amount of Discovery Completed and the Stage of the Proceedings Support Approval of the Settlement

Lead Plaintiff has sufficient information to evaluate the prospects for this case and assess the adequacy of the Settlement. By the time the Settlement was reached, Lead Counsel had: (1) reviewed and analyzed Insys's Class Period and pre-Class Period SEC filings, financial statements, press releases, conference call transcripts and other public statements; (2) collected and reviewed a comprehensive compilation of analyst reports and news reports on Insys; (3) reviewed and analyzed Insys stock trading data; (4) identified and interviewed numerous witnesses, including former employees of Insys, about Defendants' actions; (5) consulted with damages experts regarding disclosure dates and damages; (6) reviewed thousands of pages of documents pursuant to multiple FOIA requests; (7) searched civil and criminal dockets to identify and review court filings in relevant cases, including, *inter alia,* the Awerbuch criminal complaint, the *qui tam* complaint, and a prior securities action against Insys; (8) drafted the initial complaint and the highly-detailed Amended Consolidated Class Action Complaint to comply with all applicable pleading standards; (9) drafted a detailed confidential mediation statement and response statement; (10) drafted an opposition to Defendants' Motions to Dismiss and the related Request for Judicial Notice; and (11) participated in arm's-length negotiations with defense counsel, including a full-day

1  mediation, with the assistance of a well-respected mediator. Glancy Decl., ¶¶13-14, 16-26,
2  31-34, 36, 38, 42.

3      Accordingly, Lead Plaintiff and Lead Counsel were in an excellent position to evaluate
4  both the strengths and weaknesses of the Litigation and the substantial risks of continued
5  litigation to conclude that the Settlement provides a fair, adequate, and reasonable recovery in
6  the best interests of the Settlement Class. With sufficient information to properly evaluate the
7  Litigation, Lead Counsel settled this Litigation on terms favorable to the Settlement Class
8  without the substantial additional expense, risk, and uncertainty of continued litigation. This
9  factor weighs in favor of this Court's final approval of the Settlement.

10      **5.    Experienced Counsel Concur that the Settlement, Which Was**
11          **Negotiated in Good Faith and at Arm's-Length, Is Fair,**
            **Reasonable, and Adequate**

12      This case has been litigated by experienced and well-respected counsel on both sides,
13  all of whom specialize in securities litigation. Glancy Decl., ¶¶69, 71, Ex. 5 (Lead Counsel's
14  firm resume). "[T]he fact that experienced counsel involved in the case approved the
15  settlement after hard-fought negotiations is entitled to considerable weight." *Ellis v. Naval*
16  *Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. Feb. 7, 1980); *see Riker v. Gibbons*, No.
17  3:08-CV-00115-LRH, 2010 WL 4366012, at *2 (D. Nev. Oct. 28, 2010) ("An initial
18  presumption of fairness is usually involved if the settlement is recommended by class counsel
19  after arm's-length bargaining."). Moreover, settlement negotiations occurred before a
20  respected neutral, Jill R. Sperber, Esq., which further supports the fact that the Settlement
21  was the product of arm's length negotiations and hard-fought litigation. *See In re Immune*
22  *Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007). The Parties engaged in a
23  full day of formal mediation followed by weeks of negotiations as both sides submitted
24  proposals, all under the supervision of Ms. Sperber. Sperber Decl.,¶¶3, 5; Glancy Decl., ¶¶33,
25  36-37. The negotiations were in good faith, at arm's-length, and in no way collusive. Sperber
26  Decl.,¶8; Glancy Decl., ¶¶31-33, 42. Only after the substantial negotiations following a
27  mediator's proposal did the Parties agree to settle the Litigation. Sperber Decl.,¶7.
28

1    After the settlement-in-principle was reached, the Parties engaged in further

2    negotiations over the details of the Settlement. Glancy Decl., ¶38. Only after weeks of

3    additional negotiations, and substantial effort in drafting the Settlement documentation, did

4    the Parties finally agree to all of the terms of the Settlement reflected in the Stipulation. *Id.*

5    That the Litigation was hard-fought at every stage by experienced counsel strongly weighs in

6    favor of a finding that the Settlement is fair and reasonable and should be approved.

7                    **6.     The Class Members' Reaction Supports Approval of the Settlement**

8                    Pursuant to the Court's Order, dated June 2, 2015 (the "Preliminary Approval Order,"

9    Dkt. No. 67), 19,196 claim packets, comprised of the Mailed Notice and the Proof of Claim

10   form ("Notice Packets"), were sent to potential Class Members, and Summary Notices were

11   published. Glancy Decl., Ex. 2 (Declaration of Charles E. Ferrara)("Ferrara Decl."), Dkt. No.

12   71 ¶¶10-11 & Ex. 3; Supplemental Declaration of Charles E. Ferrara ("Supp. Ferrara Decl."),

13   ¶3. While the deadline to request exclusion from the Settlement Class or to object to the

14   Settlement, the Plan of Allocation and the application for attorneys' fees and expenses –

15   November 13, 2015 – has yet to pass, the reaction to date has been universally favorable. As

16   of November 2, 2015 no objections to any aspect of the Settlement or requests for exclusion

17   from the Settlement have been received. Glancy Decl., ¶¶7, 51; Supp. Ferrara Decl., ¶¶4-5.

18   "[T]he fact that the overwhelming majority of the class willingly approved the offer and

19   stayed in the class presents at least some objective positive commentary as to its fairness."

20   *Hanlon*, 150 F.3d at 1027; *In re Apollo Grp. Inc. Sec. Litig.*, CV 04-2147-PHX-JAT, 2012

21   WL 1378677, at *3 (D. Ariz. Apr. 20, 2012) ("There have been no objections from Class

22   Members . . . , which itself is compelling evidence that the Proposed Settlement is fair, just,

23   reasonable, and adequate."). Thus, all the factors typically considered in this Circuit support a

24   finding that the Settlement is fair, reasonable, and adequate and warrants final approval.

25   **III.   THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

26                   In granting preliminary approval of the Settlement, the Court also preliminarily

27   certified a Settlement Class consisting of all Persons who, during the Class Period (November

28   12, 2013 through May 14, 2014), purchased or otherwise acquired publicly traded shares of

Insys common stock. Dkt. No. 67 at ¶3.[7] Lead Plaintiff requests that the Court finally certify the Settlement Class for the purpose of administering the Settlement.

### A.  Certification Standards Generally

The Supreme Court has recognized the utility and necessity of certifying settlement classes. *See generally*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). Because the Litigation seeks damages and not injunctive relief, the Court must find that each of the requirements of Rules 23(a) (numerosity, commonality, typicality, and adequacy) and 23(b)(3) (predominance and superiority) are met to certify a settlement class. Lead Plaintiff respectfully requests that the Court take into account that "the law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws." *In re THQ, Inc., Sec. Litig.*, No. 00-1783AHM(EX), 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002); *see Yamner v. Boich*, No. C-92-20597 RPA, 1994 WL 514035, at *2 (N.D. Cal. Sept. 15, 1994) ("The Ninth Circuit favors a liberal use of class actions to enforce federal securities laws."). As demonstrated below, each of the Rule 23 requirements are readily met in this Litigation.

### B.  The Settlement Class Satisfies the Requirements of Rule 23(a)

#### 1.  Numerosity

To meet the numerosity requirement, the class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). This Litigation clearly meets that requirement: Insys's securities were listed on a national exchange and widely traded. So far, 19,196 Notice Packets have been mailed to potential Class Members. Supp. Ferrara Decl., ¶3. With thousands of Class Members, joinder would be impracticable.

#### 2.  Commonality

To meet commonality, there must be questions of either law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Because Defendants' actions at issue consist of statements

---

[7] The Preliminary Approval Order defines those Persons excluded from the Settlement Class consistent with the Stipulation. *Id.*

MOTION FOR FINAL APPROVAL OF THE SETTLEMENT, CLASS CERTIFICATION, AND PLAN OF ALLOCATION; MEM. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

13

made by or on behalf of a public company, this requirement is readily met. Questions common to all Class Members include: (1) whether the provisions of the Exchange Act were violated by Defendants' acts as alleged in the Complaint; (2) whether the press releases, SEC filings, and other public statements issued by Defendants failed to accurately reflect the business, prospects, and regulatory risks of Insys; and (3) whether the revelation of the true facts to the investing public resulted in a decline in the price of Insys stock.

### 3.   Typicality

This prong requires that the claims or defenses of the representative parties must be typical of the class's claims. Fed. R. Civ. P. 23(a)(3). Lead Plaintiff's claims are typical of the claims of the Settlement Class. Lead Plaintiff alleged that Defendants falsely: (1) represented that Subsys was being marketed on-label to target cancer patients experiencing BTCP; (2) attributed Subsys revenues to sales to cancer patients with BTCP; and (3) represented compliance with all regulatory requirements and anti-kickback laws while directing employees to market off-label above permitted dosage levels, pay kickbacks to Subsys prescribers, and lie to insurance providers. Glancy Decl. ¶18. Lead Plaintiff alleged that the misrepresentations resulted in artificial inflation of the price of the Insys securities that he purchased, and that when the truth was finally revealed, the value of his Insys securities declined. Moreover, defenses relating to the sufficiency of Defendants' disclosures and potential alternative reasons for Insys's share price decline apply equally to Lead Plaintiff and the Settlement Class. Finally, the interests of Lead Plaintiff in obtaining a fair, reasonable, and adequate settlement of the claims asserted are consistent with those of the Settlement Class, since under the proposed Plan of Allocation, Lead Plaintiff will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class. Thus, Lead Plaintiff was affected in the same way as the Settlement Class, thereby satisfying the third criterion of Rule 23(a).

### 4.   Adequacy

To meet the adequacy prong, the representative party must fairly and adequately protect the Settlement Class's interests. Fed. R. Civ. P. 23(a)(4). Rule 23(a)'s fourth criterion

is met: Lead Plaintiff is represented by highly-qualified counsel with extensive experience in securities class action litigation. Glancy Decl., ¶69 & Ex. 5, 8-10. Lead Plaintiff and Lead Counsel have prosecuted this Litigation, negotiated with Defendants, and obtained a proposed Settlement representing a significant percentage of the damages. Lead Plaintiff has regularly communicated with Lead Counsel throughout the Litigation, and has fairly and adequately protected and advanced the interests of the Settlement Class. *See* Glancy Decl., Ex. 12, ¶4 (Declaration of Hongwei Li). Thus, Lead Plaintiff and Lead Counsel have adequately represented the Settlement Class and fulfilled the requirements of Rule 23(a).

### C.  The Settlement Class Satisfies the Requirements of Rule 23(b)(3) Because Common Questions Predominate

In addition to satisfying the criteria of Rule 23(a), this Litigation meets the requirements of Rule 23(b)(3). Questions of law or fact common to the Settlement Class predominate over questions affecting only individual members of the Settlement Class where, as here, the central issues relate to Defendants' public statements and Insys's stock price reaction to the revelations of the fraud. Permitting the claims of the entire Settlement Class to be resolved in a single forum is superior to alternative methods of fairly and efficiently adjudicating the controversy. Although losses to individual members of the Settlement Class are significant, they are not sufficiently large for most to justify the expense of individual actions.[8] Accordingly, it is desirable to concentrate the prosecution of the claims in this forum and in a single, more cost-effective class action. Finally, this action does not present any difficulties in the management and/or Settlement of the Litigation as a class action.[9]

---

[8] *See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 699 (2010) (Ginsburg, J., joined by Stevens and Breyer, JJ., dissenting) (citing *Amchem*, 521 U.S. at 617) ("When adjudication is costly and individual claims are no more than modest in size, class proceedings may be 'the thing,' *i.e.*, without them, potential claimants will have little, if any, incentive to seek vindication of their rights").
[9] The difficulties of managing a class action, specifically trial manageability, is a factor of less importance where the proposal is that the action be settled and a trial is thus avoided. *See Hartless v. Clorox Co.*, 273 F.R.D. 630, 638 (S.D. Cal. 2011); *Amchem*, 521 U.S. at 620.

Because the Settlement Class meets the requirements of Rules 23(a) and (b)(3), the Court should grant final certification of the Settlement Class.

## IV.   The Plan of Allocation Fairly and Adequately Apportions the Settlement Fund Among Class Members and Thus Should Be Approved

In the Preliminary Approval Order, the Court preliminarily approved the Mailed Notice and the Plan of Allocation. Dkt. No. 67 at ¶8. Lead Plaintiff now requests that the Court give final approval of the Plan of Allocation, for the purpose of administering the Settlement. The proposed Plan of Allocation was fully described in the Mailed Notice sent to the Settlement Class and has a rational basis. *See* Ferrara Decl., Ex. A at 11-13. Here, each authorized claimant will receive a *pro rata* share of the Net Settlement Fund comprised of cash, plus interest, less Court-approved fees and expenses. *Id.*; Glancy Decl., ¶¶3, 46.

"Approval of a settlement, including a plan of allocation, rests in the sound discretion of the court." *Heritage*, 2005 WL 1594403, at *11 (citing *Class Plaintiffs*, 955 F.2d at 1284). "To warrant approval, the plan of allocation must also meet the standards by which the . . . settlement was scrutinized – namely, it must be fair and adequate." *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) (citing *Class Plaintiffs*, 955 F.2d at 1284-85); *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994). As noted in *MicroStrategy*, 148 F. Supp. 2d at 669, "the plan . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue."

The Plan was formulated by Lead Counsel, in consultation with a damages expert, with the goal of reimbursing Class Members in a fair and reasonable manner. Glancy Decl., ¶¶47-49. For these reasons, Lead Counsel believes the Plan of Allocation fairly compensates Class Members and should be approved. *Id. See Riker*, 2010 WL 4366012, at *5 ("Class counsel has consistently consulted with experts throughout this litigation, and based on these consultations, has determined that the terms agreed upon in the settlement represent a fair, adequate, and reasonable settlement of plaintiffs' claims").

1   **V.      Notice to the Settlement Class Complied with Due Process**

2          Rule 23(e) provides that "notice of the proposed dismissal or compromise [of a class

3   action] shall be given to all members of the class in such manner as the court directs." The

4   notice's purpose is to "afford members of the class due process which, in the context of the

5   [R]ule 23(b)(3) class action, guarantees them the opportunity to be excluded from the class

6   action and not be bound by any subsequent judgment." *Peters v. Nat'l R.R. Passenger Corp.*,

7   966 F.2d 1483, 1486 (D.C. Cir. 1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156,

8   173 (1974)). The Notice program utilized and carried out by Angeion Group ("Angeion"), a

9   nationally-recognized claims administration firm, under Lead Counsel's supervision, as set

10  by the Preliminary Approval Order, easily meets this standard. *See* Ferrara Decl.

11         Angeion provided notice via first-class mail to each potential member of the

12  Settlement Class whose address was reasonably ascertainable. *Id.* at ¶¶3-10. Angeion also

13  caused the Summary Notice to be published. *Id.* at ¶11 & Ex. B. The Mailed Notice describes

14  the Settlement terms, claims, releases, the process for objecting and opting out of the

15  Settlement, instructions to make a claim, pertinent deadlines, and the time, date, and place of

16  the Final Approval hearing. Ferrara Decl., Ex. A; Glancy Decl., ¶50. The Mailed Notice also

17  provided a telephone number, website link, and contact information for Lead Counsel and

18  Angeion. Ferrara Decl. ¶¶12-13 & Ex. A. These efforts to inform potential Class Members of

19  the Settlement, and their rights and obligations associated therewith, are more than sufficient

20  to satisfy due process. *See In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104

21  (5th Cir. 1977) (notice must contain "an adequate description of the proceedings written in

22  objective, neutral terms, that . . . may be understood by the average absentee class member").

23  **VI.    CONCLUSION**

24         Based on the foregoing, Lead Plaintiff respectfully requests that the Court enter an

25  order and judgment: (i) granting final approval of the Settlement and Plan of Allocation; (ii)

26  finally certifying the Settlement Class for purposes of the Settlement; (iii) finding that notice

27  to the Settlement Class satisfied due process; and (iv) entering the proposed Judgment and

28  Order of Dismissal with Prejudice of this Litigation.

Dated:  November 4, 2015

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:  _s/ Lionel Z. Glancy_
Lionel Z. Glancy
Robert V. Prongay
Leanne H. Solish
Elaine Chang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310)  201-9160

_Lead Counsel for Lead Plaintiff Hongwei Li_

**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick (004738)
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016
Telephone: (602) 255-6000
Facsimile: (602) 255-0103

_Liaison Counsel for Lead Plaintiff Hongwei Li_

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*s/ Lionel Z. Glancy*
Lionel Z. Glancy

307958.1 INSYS

# Mailing Information for a Case 2:14-cv-01043-GMS Larson v. Insys Therapeutics Incorporated et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter M Adams**
  padams@cooley.com,maraujo@cooley.com

- **Donald Wayne Bivens**
  dbivens@swlaw.com,sstanley@swlaw.com,docket@swlaw.com

- **Elaine Chang**
  echang@glancylaw.com,info@glancylaw.com

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com,mzehel@pomlaw.com

- **Koji F Fukumura**
  kfukumura@cooley.com,cdeatrick@cooley.com,chourani@cooley.com

- **Lionel Zevi Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Richard Glenn Himelrick**
  rgh@tblaw.com,sab@tblaw.com

- **Robin Bronzaft Howald**
  rhowald@glancylaw.com,treiss@glancylaw.com,hobbit99@aol.com

- **Jennifer Lynn Kroll**
  jkroll@martinbonnett.com

- **Jeremy A Lieberman**
  disaacson@pomlaw.com

- **Susan Joan Martin**
  smartin@martinbonnett.com,tmahabir@martinbonnett.com,mblawfirm@aol.com

- **Francis P McConville**
  fmcconville@pomlaw.com,abarbosa@pomlaw.com

- **Robert V Prongay**
  rprongay@glancylaw.com,info@glancylaw.com

- **Leanne Heine Solish**
  lheine@glancylaw.com

- **Nicole Elizabeth Sornsin**
  nsornsin@swlaw.com,jthomes@swlaw.com,docket@swlaw.com

- **Kara M Wolke**
  kwolke@glancylaw.com

- **Blake Zollar**
  bzollar@cooley.com,bdanziger@cooley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)