Richard G. Himelrick (004738)
**TIFFANY & BOSCO, P.A.**
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016
Telephone: (602) 255-6000
Facsimile: (602) 255-0103
E-mail: rgh@tblaw.com

Lionel Z. Glancy
Robert V. Glancy
Leanne Heine Solish
Elaine Chang
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Lead Plaintiff Hongwei Li*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Derick Larson,<br><br>          Plaintiff,<br><br>          v.<br><br>Insys Therapeutics Incorporated, et al.,<br><br>          Defendants. | Lead Case No. CV-14-01043-GMS<br>Consolidated with:<br>No. CV-14-01077-GMS<br><br>**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND REIMBURSEMENT OF LEAD PLAINTIFF'S COSTS AND EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| Hongwei Li,<br><br>          Lead Plaintiff,<br><br>          v.<br><br>Insys Therapeutics Incorporated, et al.,<br><br>          Defendants. | Date:    December 4, 2015<br>Time:    9:00 a.m.<br>Location:   SPC 80<br>Judge:  Hon. G. Murray Snow |

1

**<u>TABLE OF CONTENTS</u>**

I.      INTRODUCTION ................................................................. 1

II.     SPECIFIC EFFORTS OF LEAD COUNSEL ............................................ 3

III.    A REASONABLE PERCENTAGE OF THE "COMMON FUND"
RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING
ATTORNEYS' FEES ............................................................... 5

     A.     The Common Fund Doctrine ............................................ 5

     B.     The Percentage-of-Recovery Approach .................................. 6

     C.     Courts in the Ninth Circuit Often Hold Percentages Higher than 27.5%
of the Common Fund to Be a Reasonable Fee ............................ 7

IV.    ALL RELEVANT FACTORS CONSIDERED, AN AWARD OF 27.5% OF
THE SETTLEMENT FUND IS REASONABLE ...................................... 8

     A.     Lead Counsel Achieved an Excellent Result for the Settlement Class ........ 8

     B.     The Risks of Litigation .................................................. 10

     C.     The Skill Required and the Quality and Efficiency of the Work ................ 10

     D.     The Contingent Nature of the Case and the Financial Burden Carried by
Lead Counsel ......................................................... 12

     E.     The Customary Fee ..................................................... 12

     F.     A Lodestar Cross-Check Shows the Fee Request Is Reasonable ............... 13

     G.     The Reaction of the Settlement Class Supports the Requested Award ....... 14

V.     LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE
NECESSARY TO ACHIEVE THE BENEFIT OBTAINED .............................. 15

VI.    REIMBURSEMENT OF LEAD PLAINTIFF'S REQUESTED COSTS IS
REASONABLE AND SHOULD BE PERMITTED ............................... 16

VII.   CONCLUSION ................................................................ 17

1

## <u>TABLE OF AUTHORITIES</u>

2

Cases

3

*Antonopulos v. Am. Thoroughbreds, Inc.*,
4    No. 87-0979G (CM), 1991 WL 427893 (S.D. Cal. May 6, 1991) ................................... 8

5

*Bateman Eichler, Hill Richards, Inc., v. Berner*,
6    472 U.S. 299 (1985) .......................................................................................................... 6

7

*Behrens v. Wometco Enters., Inc.*,
8    118 F.R.D. 534 (S.D. Fla. 1988) ..................................................................................... 11

9    *Blum v. Stenson*,
10    465 U.S. 886 (1984) .................................................................................................... 6, 13

11   *Bond v. Ferguson Enters., Inc.*,
     No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ................ 8
12

13   *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*,
     8 F.3d 722 (10th Cir. 1993) ............................................................................................ 15
14

15   *Central Railroad & Banking Co. of Ga. v. Pettus*,
     113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885) ............................................................. 6
16

17   *Detroit v. Grinnell Corp.*,
     495 F.2d 448 (2d Cir. 1974), .................................................................................... 10, 11
18

19   *Eltman v. Grandma Lee's, Inc.*,
     No. 82 Civ. 1912, 1986 WL 53400 (E.D.N.Y. May 28, 1986) ....................................... 11
20

21   *Fischel v. Equitable Life Assurance Soc'y of U.S.*,
     307 F.3d 997 (9th Cir. 2002) .......................................................................................... 13
22

23   *Gunter v. Ridgewood Energy Corp.*,
     223 F.3d 190 (3d Cir. 2000) ........................................................................................... 11
24

25   *Harris v. Marhoefer*,
     24 F.3d 16 (9th Cir. 1994) .............................................................................................. 15
26

27   *Hensley v. Eckerhart*,
     461 U.S. 424 (1983) ......................................................................................................... 9

28

*Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................................. 14, 15

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................................ 7, 8

*In re Cendant Corp. Sec. Litig.*,
    109 F. Supp. 2d 235 (D.N.J. 2000) ............................................................................ 9

*In re Cendant Corp. Sec. Litig.*,
    404 F.3d 173 (3d Cir. 2005) ....................................................................................... 7

*In re Cont'l Illinois Sec. Litig.*,
    962 F.2d 566 (7th Cir. 1992) ...................................................................................... 7

*In re Crazy Eddie Sec. Litig.*,
    824 F. Supp. 320 (E.D.N.Y. 1993) ............................................................................ 9

*In re CV Therapeutics, Inc., Sec. Litig.*,
    No. C 03-3709-SI, 2007 WL 1033478 (N.D. Cal. Apr. 4, 2007) .......................... 8, 16

*In re Equity Funding Corp. of Am. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ......................................................................... 12

*In re Gen. Instrument Sec. Litig.*,
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ......................................................................... 9

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................... 7, 8, 9

*In re King Res. Co. Sec. Litig.*,
    420 F. Supp. 610 (D. Colo. Aug. 10, 1976) .............................................................. 12

*In re Linerboard Antitrust Litig.*,
    No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ................................... 14

*In re M.D.C. Holdings Sec. Litig.*,
    No. CV89-0090 E (M), 1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ...................... 13

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...................................................................................... 8

*In re OmniVision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008)........................................................ 7, 16

*In re Pac. Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ............................................................................ 8

*In re Ravisent Techs., Inc. Sec. Litig.*,
   No. Civ.A.00-CV-1014, 2005 WL 906361 (E.D. Pa. April 18, 2005)........... 14

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ......................................................................... 14

*In re Safety Components, Inc. Sec. Litig.*,
   166 F. Supp. 2d 72 (D.N.J. 2001) ............................................................... 14

*In re Synthroid Mktg. Litig.*,
   264 F.3d 712 (7th Cir. 2001) ....................................................................... 15

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .......................................................... 6, 7, 10, 12

*Kirchoff v. Flynn*,
   786 F.2d 320 (7th Cir. 1986) ................................................................... 7, 13

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009).................. 10-11

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
   540 F.2d 102 (3d Cir. 1976) ......................................................................... 10

*Miltland Raleigh-Durham v. Myers*,
   840 F. Supp. 235 (S.D.N.Y. 1993) ............................................................... 15

*Patel v. Axesstel, Inc.*,
   No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015)............... 8

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) ...................................................................... 6, 7

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ........................................................................ 6

*Tellabs, Inc., v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................ 6

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ............................................................... 6-7

*Van Vranken v. Atlantic Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995)....................................................... 16

*Vincent v. Hughes Air West, Inc.*,
    557 F.2d 759 (9th Cir. 1977) ................................................................. 6

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................passim

Statutes

15 U.S.C. § 78u-4(a)(6) ............................................................................ 7

15 U.S.C. 78U-4(a)(4) ............................................................................ 16

Rules

Fed. R. Civ. P. 23.................................................................................... 1

Pursuant to Fed. R. Civ. P. 23, Lead Plaintiff Hongwei Li ("Lead Plaintiff")[1] hereby moves this Court for an Order awarding: (1) attorneys' fees of 27.5% of the Settlement Fund; (2) expenses of $63,167.15 incurred in prosecuting this Litigation; and (3) reimbursement of costs and expenses to the Lead Plaintiff. This Motion is supported by (1) the following Memorandum of Points and Authorities; (2) the Declaration of Lionel Z. Glancy[2] ("Glancy Decl.") filed herewith; and (3) the accompanying exhibits and declarations.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Through the efforts of Lead Plaintiff and Lead Counsel, Lead Plaintiff achieved a settlement of $6.125 million in cash (the "Settlement"). The Settlement recovers approximately 10.02% of Lead Plaintiff's best case estimate of maximum Class Period damages of $61.1 million and is a fair and reasonable result, particularly when viewed in light of the considerable risks posed by further litigation and the continued uncertainty of proving liability and damages. *See* Glancy Decl., ¶¶6, 44, 72-80; Final Approval Memorandum[3] at pp. 5-10; Declaration of Mediator Jill R. Sperber, Esq. ("Sperber Decl."), ¶¶9-11.

Lead Counsel seeks an award of 27.5% of the Settlement and respectfully submits that the requested fee award is appropriate because of the significant recovery obtained for the Settlement Class that is largely attributable to its vigorous prosecution of the Litigation, and was achieved only after, *inter alia*: a thorough investigation, including interviewing witnesses and former employees of the Company, reviewing thousands of pages of documents provided by the Food and Drug Administration ("FDA"); consulting with a damages expert; drafting an

[1] Unless otherwise defined, capitalized terms herein have the same meaning as set forth in the Stipulation of Settlement dated June 8, 2015 (the "Stipulation"). Docket Entry ("Dkt.") No. 32-2, Ex. 1.

[2] This memorandum focuses primarily upon the legal and factual basis for approval of attorneys' fees and expenses. For a more complete factual recitation of the Litigation and Settlement than set forth herein, Lead Counsel respectfully refers the Court to the Glancy Declaration, filed concurrently herewith.

[3] "Final Approval Memorandum" refers to the Lead Plaintiffs' Motion for Final Approval of the Proposed Settlement, Class Certification and the Plan of Allocation and Incorporated Memorandum of Law in Support Thereof, filed concurrently herewith.

1   initial complaint (Dkt. No. 1) and a highly detailed consolidated Amended Class Action

2   Complaint (Dkt. No. 41); researching and drafting an opposition to Defendants' motion to

3   dismiss and associated response to Defendants' request for judicial notice (Dkt. Nos. 56-57);

4   researching and drafting an opening and response brief prior to the mediation; and engaging in

5   arm's length settlement negotiations including the participation in a full-day mediation with

6   Defendants and almost a month of follow-up negotiations under the supervision of a third-

7   party mediator.  *See* Glancy Decl., ¶¶13-42; § II *infra*.

8       The reaction of the Settlement Class also strongly supports the requested fee. As of

9   November 2, 2015, pursuant to the Court's Order dated June 2, 2015 (Dkt. No. 67), the Claims

10  Administrator mailed 19,196 Notice packets to potential Class Members, enclosing the Mailed

11  Notice and the Proof of Claim form. *See* Glancy Decl., ¶¶7, 50, 82 & Ex. 3 thereto

12  (Supplemental Declaration of Charles E. Ferrara ("Supp. Ferrara Decl.")), ¶3. The Mailed

13  Notice specifically advised Class Members that Lead Counsel intended to apply to the Court

14  for an award of attorneys' fees representing up to 30% of the Settlement Fund and that Lead

15  Counsel would seek expenses not to exceed $75,000.00. Dkt. No. 71, Declaration of Charles

16  E. Ferrara ("Ferrara Decl."), at Ex. A at p. 2.

17      The deadline to request to be excluded from the Settlement or to file an objection to the

18  Settlement is November 13, 2015. To date, not a single objection has been filed with respect to

19  any aspect of the Settlement. Glancy Decl., ¶¶7, 83; Supp. Ferrara Decl., ¶5. Additionally, no

20  requests for exclusion have been received by the Claims Administrator as of November 2,

21  2015. Glancy Decl., ¶7; Supp. Ferrara Decl., ¶4. The fact that there have been no objections to

22  the potential 30% attorneys' fee request or expense request contained in the Mailed Notice

23  demonstrates the reasonableness of Lead Counsel's 27.5% fee request here.

24      The fairness and reasonableness of Lead Counsel's fee and expense request is further

25  confirmed when cross-checked with the Lead Counsel's cumulative lodestar.[4]  Lead Counsel

26  _____

27  [4] Lead Counsel's lodestar is comprised of the total hours worked by the Court-appointed Lead
    Counsel (Glancy Prongay & Murray LLP), Lead Plaintiffs' additional counsel and the Court-

28  appointed Liaison Counsel, Tiffany and Bosco, P.A. Lead Plaintiffs' additional counsel

spent over 2,500 hours of professional time, having a market value of approximately $1,236,750.00 in prosecuting the Litigation.  Glancy Decl., ¶¶85-86 and Exs. 6, 8-10.  The requested fee, which incorporates a lodestar multiplier of 1.36,[5] compensates Lead Counsel for this time and labor, as well as the substantial risks associated with litigating this case on a fully contingent basis.

For the reasons set forth below, Lead Plaintiff respectfully submits that the requested attorneys' fees and expenses are fair and reasonable under applicable legal standards, especially in light of the contingency risk undertaken, and should be awarded by the Court.

## II.   SPECIFIC EFFORTS OF LEAD COUNSEL

The gravamen of the Litigation required Lead Plaintiff to prove that Defendants knowingly or recklessly (1) misrepresented that Subsys was being marketed on-label to cancer patients experiencing breakthrough cancer pain ("BTCP"); (2) falsely attributed Subsys revenues to sales to cancer patients with BTCP; and (3) misrepresented compliance with all regulatory requirements and anti-kickback laws while directing employees to market off-label above permitted dosage levels, pay kickbacks to Subsys prescribers, and lie to insurance providers. *See* Glancy Decl., ¶18. In addition, to establish liability, Lead Plaintiff would be required to prove that the public revelations of the truth about Defendants' alleged misrepresentations resulted in multiple declines in the price of Insys common stock.

To successfully prosecute the Litigation, Lead Counsel needed to familiarize themselves with FDA and Health Insurance Portability and Accountability Act of 1996 ("HIPAA") regulations and the nature of Insys's relationships between prescribers, sales representatives, and insurance providers. In addition to proof of liability, Lead Plaintiff would be required to prove that the public revelations of the truth about Defendants' alleged misrepresentations resulted in a decline in the price of Insys common stock. To do so, Lead

_____

includes The Rosen Law Firm, P.A., and Pomerantz LLP. For purposes of this memorandum only, these four law firms are collectively referred to as "Lead Counsel."

[5] Based on the cash value of the Settlement Fund of $6.125 million, the requested 27.5% fee is worth approximately $1,684,375, plus interest.  Thus, the lodestar value of $1,236,750.00 yields a multiplier of approximately 1.36.

Plaintiff would have to engage experts to opine on the issues of loss causation and damages.

As explained in detail in the Glancy Declaration (at ¶42), the work performed by Lead Counsel includes:

- Reviewing and analyzing Insys's SEC filings, financial statements, prospectus, press releases, earnings calls and investment conference transcripts, and other public statements;

- Reviewing thousands of pages of documents provided by the FDA, pursuant to multiple FOIA requests to government agencies regarding Insys, the Transmucosal Immediate Release Fentanyl Risk Evaluation and Mitigation Strategy ("TIRF-REMS") program, and FDA Adverse Event Reporting System ("FAERS") reports;

- Searching court dockets and public resources to identify and review relevant court filings, including the Awerbuch criminal complaint, the *qui tam* complaint, a previous securities action against Insys, and other actions against Defendants;

- Collecting and reviewing a comprehensive compilation of analyst reports and news service reports on Insys;

- Reviewing and analyzing stock trading data relating to Insys;

- Identifying, locating, and interviewing former Insys employees about Defendants' actions and the Company's business and operations;

- Identifying and locating hundreds of third parties, including physicians and medical staff with relationships to Insys and potential knowledge about Defendants' actions and the Company's business and operations;

- Reviewing Lead Plaintiff's qualifications to serve as lead plaintiff and class representative;

- Reviewing thousands of physician payment records from the government's Open Payments database to identify Insys's payments to Subsys prescribers

- Drafting the initial complaint and the highly-detailed Amended Consolidated Class Action Complaint in a manner which complied with the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA");

- Retaining and consulting with a damages expert to verify the statistical significance

of each alleged disclosure, estimate the overall damages for the Settlement Class, and develop a Plan of Allocation to fairly distribute the Settlement among Class Members;

- Researching and drafting a detailed confidential mediation statement with supporting exhibits explaining the merits of the case and a confidential reply mediation statement with supporting exhibits responding to Defendants' arguments in the mediation statement attacking the alleged partial disclosures and other allegations;

- Participating in a full-day mediation session with defense counsel and their insurance carrier representatives under the supervision of a well-respected mediator;

- Researching and drafting memoranda opposing Defendants' Motion to Dismiss, and the related Request for Judicial Notice;

- Obtaining a favorable settlement offer after weeks of arm's-length negotiation efforts with defense counsel following the mediation and additional negotiations following the agreement-in-principle to finalize the terms of the Settlement; and

- Preparing the Stipulation, Settlement motion papers, and related documents necessary to provide notice of the Settlement to potential Class Members and to obtain preliminary and final approval of the Settlement.

Lead Counsel's efforts to successfully resolve this Litigation have been without compensation of any kind to date, and payment of attorneys' fees was and always has been wholly contingent upon the result achieved. As compensation for these efforts, Lead Counsel respectfully request this Court to award attorneys' fees of 27.5% of the Settlement Fund, plus $63,167.15 in unreimbursed expenses. Supported by ample case law, both in this Circuit and across the country, Lead Counsel's 27.5% fee request is appropriate compensation for the excellent result Lead Counsel have obtained for the Settlement Class.

## III.   A REASONABLE PERCENTAGE OF THE "COMMON FUND" RECOVERED IS AN APPROPRIATE APPROACH TO AWARDING ATTORNEYS' FEES

### A.   The Common Fund Doctrine

It has long been recognized that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to

recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).  In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) ("*Paul, Johnson*"),[6] the Ninth Circuit explained the equitable principle underlying such fee awards:

> Since the Supreme Court's 1885 decision in *Central Railroad & Banking Co. of Ga. v. Pettus*, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885), it is well settled that the lawyer who creates a common fund is allowed an *extra* reward, beyond that which he has arranged with his client, so that he might share the wealth of those upon whom he has conferred a benefit…. The amount of such a reward is that which is deemed "reasonable" under the circumstances.

(Emphasis in original). The purpose of the "common fund" doctrine is to avoid unjust enrichment, requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

Courts also have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons and to discourage future similar misconduct. Indeed, the Supreme Court has emphasized that private securities actions, such as the instant Litigation, provide an effective weapon in the enforcement of the securities laws. *See generally, Bateman Eichler, Hill Richards, Inc., v. Berner*, 472 U.S. 299, 310 (1985); *see also Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the [SEC]").

## B.   The Percentage-of-Recovery Approach

In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine, a "reasonable" fee may be based "on a percentage of the fund bestowed on the class." In *Paul, Johnson*, 886 F.2d at 268, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990), and *Torrisi v. Tucson Elec.*

---

[6] Unless otherwise noted, all internal quotations and citations are omitted.

*Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993), the Ninth Circuit expressly approved the use of the percentage-of-recovery method in common fund cases.

Following the Ninth Circuit's decisions in *Paul, Johnson* and its progeny, district courts have almost uniformly shifted to the percentage method to award fees in common fund cases. Indeed, use of the percentage method "appears to be dominant." *In re OmniVision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). There are compelling reasons most courts have opted for the percentage approach. First, it is consistent with private marketplace practice where contingent fee attorneys are customarily compensated by a percentage of the recovery.[7] Second, it more closely aligns counsel's interest in being paid a fair fee with the interest of the class to achieve the maximum possible recovery with the most efficient use of time and resources.[8] Third, use of the percentage-of-recovery method decreases the burden imposed on the court (by avoiding a time-consuming lodestar analysis), and assures that Class Members do not experience undue delay in receiving their share of the settlement. *See In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378-79 (N.D. Cal. 1989). Finally, the PSLRA expressly provides that class counsel is entitled to attorneys' fees that represent a "reasonable percentage" of the damages recovered by the class. *See* 15 U.S.C. § 78u-4(a)(6); *see In re Cendant Corp. Sec. Litig.*, 404 F.3d 173, 188 n.7 (3d Cir. 2005) ("the PSLRA has made percentage-of-recovery the standard for determining whether attorneys' fees are reasonable").

**C.   Courts in the Ninth Circuit Often Hold Percentages Higher than 27.5% of the Common Fund to Be a Reasonable Fee**

While the guiding principle in the Ninth Circuit is that a fee award should be "reasonable under the circumstances," *WPPSS*, 19 F.3d at 1296, "courts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions." *In re*

---

[7] *See In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 572 (7th Cir. 1992) ("The class counsel are entitled to the fee they would have received had they handled a similar suit on a contingent fee basis, with a similar outcome, for a paying client.").

[8] *See Kirchoff v. Flynn*, 786 F.2d 320, 325-26 (7th Cir. 1986) ("The lawyer gains only to the extent his client gains[,]…ensur[ing] a reasonable proportion between the recovery and the fees . . . reward[ing] exceptional success . . . penaliz[ing] failure . . . [and] automatically handl[ing] compensation for the uncertainty of litigation.").

1    *Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *18 (C.D. Cal. June 10,

2    2005). In light of the significant risks in pursuing this litigation, the favorable result obtained,

3    the significant financial and time commitment of Lead Counsel, the contingent nature of the

4    representation, and the skill and efforts of Lead Counsel, an award of 27.5% of the recovery

5    obtained for the Settlement Class is appropriate. While the benchmark for attorneys' fees in

6    securities class actions is often 25% in the Ninth Circuit, where, as here, Lead Counsel have

7    performed substantial work that resulted in a favorable result for the Settlement Class, courts

8    in the Ninth Circuit and this district often grant an award of 30% or more of the common fund

9    as a fee. *Activision*, 723 F. Supp. at 1377 (awarding fees equivalent to 32.8% of the settlement

10   fund: "This court's review of recent reported cases discloses that nearly all common fund

11   awards range around 30% even after thorough application of either the lodestar or twelve-

12   factor method."); *Heritage Bond*, 2005 WL 1594403, at *13, *18 (the "benchmark percentage

13   should be adjusted" for more complex actions and awarding 33-1/3% of the settlement fund in

14   light of "the substantial proposed benefit to the class, the complexity of the case, the risks

15   associated with pursuing the case to judgment, [and] the absence of any objection.").[9]

16   **IV.   ALL RELEVANT FACTORS CONSIDERED, AN AWARD OF 27.5% OF THE
           SETTLEMENT FUND IS REASONABLE**

17        **A.    Lead Counsel Achieved an Excellent Result for the Settlement Class**

18        Courts have consistently recognized that the result achieved is an important factor to be

19   _____

20   [9] *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee
     award equal to 33 1/3% of the fund); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir.

21   1995) (approving a 33% fee award for a $12 million settlement); *Siracusano v. Matrixx
     Initiatives, Inc. et al.*, No. CV-04-0886-PHX-NVW, slip. op. (D. Ariz. Nov. 13, 2012)

22   (awarding fees of 30% of the fund); *In re AMERCO Sec. Litig.*, No. CIV-04-2182-PHX-RJB,
     slip. op. (D. Ariz. Nov. 3, 2006) (awarding fees of 30% for a $7 million settlement); *Patel v.

23   Axesstel, Inc.*, No. 3:14-CV-1037-CAB-BGS, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23,
     2015) (awarding fees of 30% of the fund); *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662

24   OWW MJS, 2011 WL 2648879, at *15 (E.D. Cal. June 30, 2011) (awarding 30% of the fund);

25   *In re Terayon Commc'n Sys., Inc. Sec. Litig.*, No. C-00-1967-MHP (N.D. Cal. October 3,
     2007) (awarding 30% of common fund in $15 million settlement); *In re CV Therapeutics, Inc.,

26   Sec. Litig.*, No. C 03-3709 SI, 2007 WL 1033478, at *1 (N.D. Cal. Apr. 4, 2007) (awarding
     30% of common fund); *Antonopulos v. N. Am. Thoroughbreds, Inc.*, No. 87-0979G(CM),

27   1991 WL 427893 (S.D. Cal. May 6, 1991) (awarding fee equal to 33-1/3% of recovery).

28

considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("the most critical factor is the degree of success obtained"); *Heritage Bond*, 2005 WL 1594403, at *19 ("The result achieved is a significant factor to be considered in making a fee award.").

The Settlement Fund created here consists of $6.125 million in cash. This amount, representing approximately 10.02% of the maximum estimated Class Period damages of $61.1 million,[10] is an excellent recovery for the Settlement Class. *See* Glancy Decl., Ex. 4 at 9 (Figure 8) (Cornerstone Research study reviewing settlements reported for the years 2005-2014, found that where, as here, estimated damages were $50 million to $124 million, the median settlement was 3.0% of damages – with that figure only slightly higher at 5.0% in 2014); *see also In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 245 (D.N.J. 2000) (citing cases which settled for 1.6-14% of claimed damages). Indeed in cases where the "result achieved" provided similar recovery to the Settlement Class, courts have deemed it appropriate to award approximately 33% in fees. *See, e.g. In re Crazy Eddie Sec. Litig.*, 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (awarding fee equal to 33.8% of the recovery where the Settlement recovered 10% of damages); *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 432 (E.D. Pa. 2001) (awarding fee equal to one third (33.33%) of the recovery where the Settlement recovered 11% of estimated damages).

The Settlement provides Class Members with more than 10% of Lead Plaintiff's estimated best possible result for Class Period damages, assuming complete victory, including proving scienter and loss causation. Glancy Decl., ¶44. Lead Counsel negotiated a settlement

---

[10] Lead Counsel's damages consultant determined that there were 7,699,877 Insys shares purchased and damaged during the Class Period. The Plan of Allocation was created pursuant to Section 21(D)(e)(1) of the PSLRA, which states that "in any private action arising under this title in which the plaintiff seeks to establish damages by reference to the market price of a security, the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated." The average closing price of Insys common stock during the 90 day period beginning on May 14, 2014 and ending on August 11, 2014 was $27.27 per share. According to the Plan of Allocation, the total amount of damages for these shares was $61.1 million.

representing a similar percentage of the alleged loss with the above-referenced settlements approved by courts. The results achieved by Lead Counsel in such a legally and factually complex case justify the requested fee award of 27.5% of the recovery.

**B.      The Risks of Litigation**

Numerous cases have recognized that the risks of litigation are important factors in determining a fee award. *See, e.g., WPPSS*, 19 F.3d at 1299-1300; *Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000); *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). As endorsed by the Ninth Circuit, the risk of litigation is an important, if not the foremost, factor in adjusting the attorneys' benchmark percentage upward. *See Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance").[11]

The Litigation settled for 10.02% of Class Period damages *before* Lead Plaintiff had proved that Insys stock traded in an efficient market (a prerequisite for class certification) and *before* Lead Plaintiff demonstrated (either on motion to dismiss, summary judgment, or at trial) Defendants' scienter or the amount of Insys's share price decline attributable to the revelation of the truth about Defendants' alleged misrepresentations to the investing public about the Company's financial condition. Moreover, Defendants were represented by extremely capable counsel, who were willing and able to vigorously defend their clients' positions. *See* Glancy Decl., at ¶¶60, 71; Sperber Decl., at ¶11. In sum, the obstacles to recovery faced by the Class in this securities class action were significant, particularly given the strict pleading requirements of the PSLRA and applicable proof requirements during the later stages of the case (and on appeal).

**C.      The Skill Required and the Quality and Efficiency of the Work**

The "prosecution and management of a complex national class action requires unique legal skills and abilities." *Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL

---

[11] The risks of further litigation are analyzed in connection with approval of the Settlement itself and will not be discussed at length herein. The Court is also respectfully referred to paragraphs ¶¶72-80 of the Glancy Declaration.

248367, at *6 (N.D. Cal. Feb. 2, 2009).  Here, the quality of Lead Counsel's work on this case is reflected in the substantial recovery obtained. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988). The standing and prior experience of Lead Counsel are also relevant in determining fair compensation. *See, e.g., Detroit*, 495 F.2d at 470; *Eltman v. Grandma Lee's, Inc.*, No. 82 Civ. 1912, 1986 WL 53400, at *9 (E.D.N.Y. May 28, 1986).

Lead Counsel's supporting declaration includes firm resumes for Glancy Prongay & Murray LLP ("GPM"), Tiffany and Bosco, P.A., The Rosen Law Firm, P.A., and Pomerantz LLP, and a description of each firm's background and experience in conducting securities litigation.  Glancy Decl., Ex. 5 (GPM Resume), Ex. 8 (Declaration of Richard G. Himelrick) at Ex. C, Ex. 9 (Declaration of Jeremy A. Lieberman) at Ex. 1, Ex. 10 (Declaration of Phillip Kim) at Ex. 1. As this submission demonstrates, Lead Counsel have extensive and significant experience in the highly-specialized field of securities class action litigation.

Given the complexity of the issues presented in this Litigation, including the contested issues of market efficiency, loss causation, scienter, and damages, only skilled counsel who applied themselves diligently could have obtained such a favorable recovery. Glancy Decl. ¶¶74-76. Specifically, Lead Counsel were required to: understand FDA and HIPAA regulations and Insys's network of relationships between prescribers, sales representatives, and insurance providers; establish senior management's knowledge of Insys's improper sales and marketing practices; and demonstrate how the revelation of these practices caused a decrease in the price of Insys's stock. *Id*. at ¶¶25-26, 42. Moreover, because the third parties such as physicians and their medical staff were not Insys employees, and were scattered throughout the country, Lead Counsel expended considerable efforts identifying potential third party witnesses in addition to former Insys employees in order to gather information. *Id*. at ¶42. It is important to reward skilled counsel for pursuing difficult cases because "the stated goal in percentage fee-award cases [is] of 'ensuring that competent counsel continue to be willing to undertake risky, complex, and novel litigation.'" *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 198 (3d Cir. 2000).

The quality of opposing counsel is also important in evaluating the quality of the work done by Lead Counsel. *See, e.g., In re Equity Funding Corp. of Am. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977); *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 634 (D. Colo. Aug. 10, 1976).  Here, Lead Plaintiff was opposed vigorously by one of the nation's leading defense firms, Cooley LLP, which frequently defends public companies in securities class actions. Glancy Decl., ¶71.

In sum, Lead Counsel was required to exercise a high level of skill and efficiency to present a strong enough case to encourage the Company to compensate Class Members for their losses. Lead Counsel evaluated the merits and risks presented, negotiated a favorable payment, and settled the Litigation on excellent terms for the Class. Lead Counsel's diligent efforts should be rewarded.

### D.    The Contingent Nature of the Case and the Financial Burden Carried by Lead Counsel

The Ninth Circuit recognizes that the determination of a fair fee must include consideration of the contingent nature of the fee and the difficulties which were overcome in obtaining the settlement: "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases." *WPPSS*, 19 F.3d at 1299 (citing Richard Posner, *Economic Analysis of Law*, § 21.9, at 534-35 (3d ed. 1986)). In fact, contingent fees that may far exceed the typical non-contingent market value of the services are accepted in the legal profession as a legitimate way of assuring competent representation for Lead Plaintiff(s), who could not afford to pay on an hourly basis regardless of whether they win or lose. *Id.*

Lead Counsel has received no compensation over the entirety of this Litigation, and incurred significant expenses for the benefit of the Class. Any fee award or expense payment to Lead Counsel has always been at risk and completely contingent on the result achieved and on this Court's exercise of its discretion in making any award. Glancy Decl., ¶¶72-79.

### E.    The Customary Fee

If this were not a class action, the customary fee arrangement would be contingent, on a

percentage basis, and in the range of 30% to 40% of the recovery. *E.g., Blum*, 465 U.S. at 903 n.* ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *In re M.D.C. Holdings Sec. Litig.*, No. CV89-0090 E (M), 1990 WL 454747, at *7 (S.D. Cal. Aug. 30, 1990) ("In private contingent litigation, fee contracts have traditionally ranged between 30% and 40% of the total recovery"); *Kirchoff*, 786 F.2d at 323 (40% contractual award if the case had gone to trial). Thus, as the customary contingent fee in the private marketplace – 30% to 40% of the fund recovered – is greater than the percentage-of-recovery fee requested in this case, Lead Counsel's request of 27.5% is reasonable.

Additionally, when determining the market rate by looking at fees awarded in similar cases, the rates billed by Lead Counsel (ranging from $350-$775 per hour for non-partners and $595-795 per hour for partners) are comparable to peer plaintiff and defense firms litigating matters of similar magnitude, including Defendants' counsel herein. *See* Glancy Decl., Ex. 11.

Under these circumstances, a fee award of a reasonable percentage fee of 27.5% of the Settlement (plus expenses) reflects both the benefit conferred and a discount to the customary, privately-contracted contingent fee rate.

## F. A Lodestar Cross-Check Shows the Fee Request Is Reasonable

As a "cross-check" on the reasonableness of a requested fee award, courts often compare counsel's "lodestar" (a compilation of the hours performed at the various rates charged for the professionals providing the services herein) with the fee request made under the percentage-of-the-recovery method. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002); *Fischel v. Equitable Life Assurance Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). "[T]he lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted … [and] may provide a useful perspective on the reasonableness of a given percentage award." *Vizcaino*, 290 F.3d at 1050.

In securities class actions it is common for lodestar figures to be adjusted upward by a multiplier to reflect a variety of factors, including the complexity of the case and the risks assumed by counsel. For example, the court in *Vizcaino* approved a fee representing a multiple

of 3.65 times counsel's lodestar. *Id.* at 1051-52 (the *Vizcaino* court listed twenty-three shareholder settlements and the multipliers for each, in which the average multiplier is 3.28).[12]

Here, the lodestar cross-check confirms that the fee requested by Lead Counsel, which represents a multiplier of approximately 1.36, is fair and reasonable.[13] Additionally, Lead Counsel's lodestar does not include the time and effort that they will continue to devote to the case.[14] Indeed, the 1.36 multiplier in this case is highly reasonable compared to both the 3.65 multiplier approved in *Vizcaino* and the 1-4 range of frequently awarded multipliers discussed in *Vizcaino*.

**G.     The Reaction of the Settlement Class Supports the Requested Award**

Courts often consider the reaction of the class when deciding whether to award the requested fee. *See, e.g., Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) ("[T]he lack of objection from any Class Member supports the attorneys' fees award."); *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (finding that a "low level of objection[s] is a rare phenomenon").

As sworn by the Claims Administrator, 19,196 Notice packets have been disseminated to potential Class Members and Summary Notice was published. Supp. Ferrara Decl., ¶3; Ferrara Decl., ¶11 & Ex B. Class Members were informed in the Mailed Notice and the Summary Notice that Lead Counsel could apply for attorneys' fees of up to 30% of the

---

[12] *See also In re Ravisent Techs., Inc. Sec. Litig.*, No. Civ.A.00-CV-1014, 2005 WL 906361, at *12 (E.D. Pa. April 18, 2005) (fee represented a multiplier of 3.1 of the lodestar); *In re Linerboard Antitrust Litig.*, No. MDL 1261, 2004 WL 1221350, at *16 (E.D. Pa. June 2, 2004) (noting that from 2001 through 2003, the average multiplier approved in common fund cases was 4.35); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 103 (D.N.J. 2001) (lodestar of $534,000 and fee awarded of $1.5 million represented a multiplier of 2.81).

[13] As set forth above, the total cash value of the Settlement is $6.125 million, making the 27.5% fee requested equal to $1,684,375. As set forth in the Glancy Declaration, Lead Counsel have spent over 2,500 hours of professional time on this case to date. Glancy Decl., ¶85. The total lodestar, based on the hourly rates, is approximately $1,236,750.00, yielding a multiplier of 1.36. *Id.* at ¶86.

[14] In addition to the time expended to date, Lead Counsel will expend additional time directing the claims administration process and final distribution, and will not seek additional compensation for this work.

Settlement Fund (plus interest), plus reimbursement of expenses (not to exceed $75,000), and were advised of their right to object to Lead Counsel's fee and expense request. To date, no objections to the larger fee and expense requests contained in the Mailed Notice and the Summary Notice, or any aspect of the Settlement, has been filed with the Court or received by the Claims Administrator or Lead Counsel.  Glancy Decl., ¶¶7, 83; Supp. Ferrara Decl., ¶¶4-5.

## V.   LEAD COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

The Court should approve Lead Plaintiff's requested payment of Lead Counsel's expenses. Courts have found that class counsel are entitled to reimbursement for certain types of out-of-pocket expenses that an attorney would normally expect the client to pay.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"); *see also Immune Response*, 497 F. Supp. 2d at 1177; *Bratcher v. Bray-Doyle Indep. Sch. Dist. No. 42*, 8 F.3d 722, 725-26 (10th Cir. 1993) (holding that expenses are reimbursable if they would normally be billed to a client); *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.").

To prosecute this Litigation to Settlement, Lead Counsel incurred reasonable and necessary costs and expenses in the amount of $63,167.15. These expenses were incurred largely in conjunction with the engagement of a damages consultant, a private investigator, and a mediator. Glancy Decl., ¶88 and Exs. 7, 8-10.[15] Lead Counsel therefore seeks payment of these costs and expenses related to the prosecution of this Litigation on behalf of the Class. Glancy Decl., ¶88. Additionally, because the expenses at issue are the types reimbursed by individual clients in the marketplace, they should be paid from the common fund.

---

[15]  Exhibits 7, 8-10, of the Glancy Declaration describes the particulars of Lead Counsel's expenses in "a level of detail that paying clients find satisfactory."  *See, e.g., In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001).

Because the expenses were incurred with no guarantee of recovery, Lead Counsel had a strong incentive to keep them as low as reasonably possible – and did so. Indeed, total expenses of $63,167.15 is significantly less than the $75,000.00 estimate contained in the Mailed Notice. *See* Ferrara Decl, Ex. A. Moreover, the fact that no Class Members objected to the payment of Lead Counsel's estimated expenses further evidences their reasonableness.

Whereas the expenses were relatively small compared to the recovery obtained, and were incurred on an ongoing basis for such items as expert fees, filing fees, legal research, hiring an investigator, and other expenses necessarily incurred and directly related to the prosecution of the case, the total amount of expenses is reasonable and should be reimbursed in full from the common fund following payment of attorneys' fees.

## VI. REIMBURSEMENT OF LEAD PLAINTIFF'S REQUESTED COSTS IS REASONABLE AND SHOULD BE PERMITTED

The PSLRA permits a Lead Plaintiff to seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class . . ." 15 U.S.C. 78U-4(a)(4). In accordance with the PSLRA, and the inherent powers of the court, courts routinely grant reimbursement of substantial sums to lead plaintiffs and class representatives. *See OmniVision*, 559 F. Supp. 2d at 1049 ($29,000 award); *Immune Response*, 497 F. Supp. 2d ($40,000 award); *CV Therapeutics*, 2007 WL 1033478, at *2 ($26,000 award in $13,350,000 million settlement); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) ($50,000 award in common-fund case).

Here, Lead Plaintiff is a sophisticated investor who has dedicated time and expenses to prosecuting the Litigation and submits herewith a declaration documenting his cost in lost wages in the amount of $2,500. Glancy Decl., ¶90 & Ex. 12. (Declaration of Hongwei Li) ("Li Decl."), ¶7. The $2,500 in costs represent Lead Plaintiff's lost wages for time spent directly related to his representation of the Class, including: reviewing pleadings, motions, and other documents; selecting counsel, locating documents; discussing the status of the case with Lead Counsel; and staying apprised of all developments in the case, including ongoing discussions regarding the mediation and settlement. Glancy Decl., ¶¶90-92 and Li Decl., ¶4. Furthermore,

MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES, AND REIMBURSEMENT OF LEAD PLAINTIFF'S COSTS AND EXPENSES; MEMORANDUM IN SUPPORT THEREOF

16

the Mailed Notice disclosed that Lead Plaintiff would seek an award up to $2,500, and there has been no objection from any Class Member. Therefore, given lead plaintiff awards of similar or larger size, and based on similar hourly rates, have been awarded in other securities cases, Lead Plaintiff's active involvement in the Litigation, and the lack of objections here, Lead Plaintiff's request for $2,500 compensation for his time and expenses should be granted.

## VII.   CONCLUSION

Securities class actions are complex and laden with risk. Lead Counsel accepted this risk and expended over 2,500 hours vigorously litigating this Litigation despite the very real possibility that they could receive no compensation whatsoever. As demonstrated herein and in the papers submitted herewith, the Litigation has been hard-fought. From the beginning, Lead Plaintiff has been faced with determined adversaries represented by experienced and equally-determined defense counsel. Without any assurance of victory, Lead Plaintiff and Lead Counsel pursued this Litigation to a successful conclusion.

In light of all of the foregoing considerations, the Settlement represents an excellent recovery on behalf of the Settlement Class and reflects the skill and dedication of Lead Counsel. Thus, it is respectfully requested that the Court approve the fee and expense application and enter the Order submitted herewith awarding Lead Counsel 27.5% of the Settlement Fund plus $63,167.15 for expenses; reimbursement to Lead Plaintiff Hongwei Li in the amount of $2,500.00 for his time and expenses prosecuting this Litigation; and interest earned thereon at the same rate and for the same period as that earned on the Settlement Fund until paid in full.

///

///

///

///

///

Dated:  November 4, 2015

Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Lionel Z. Glancy*
Lionel Z. Glancy
Robert V. Prongay
Leanne H. Solish
Elaine Chang
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310)  201-9160

*Lead Counsel for Lead Plaintiff Hongwei Li*

**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick (004738)
Seventh Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, AZ 85016
Telephone: (602) 255-6000
Facsimile: (602) 255-0103

*Liaison Counsel for Lead Plaintiff Hongwei Li*

## CERTIFICATE OF SERVICE

I hereby certify that on November 4, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

*s/ Lionel Z. Glancy*
Lionel Z. Glancy

# Mailing Information for a Case 2:14-cv-01043-GMS Larson v. Insys Therapeutics Incorporated et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Peter M Adams**
  padams@cooley.com,maraujo@cooley.com

- **Donald Wayne Bivens**
  dbivens@swlaw.com,sstanley@swlaw.com,docket@swlaw.com

- **Elaine Chang**
  echang@glancylaw.com,info@glancylaw.com

- **Patrick V Dahlstrom**
  pdahlstrom@pomlaw.com,mzehel@pomlaw.com

- **Koji F Fukumura**
  kfukumura@cooley.com,cdeatrick@cooley.com,chourani@cooley.com

- **Lionel Zevi Glancy**
  info@glancylaw.com,lglancy@glancylaw.com

- **Richard Glenn Himelrick**
  rgh@tblaw.com,sab@tblaw.com

- **Robin Bronzaft Howald**
  rhowald@glancylaw.com,treiss@glancylaw.com,hobbit99@aol.com

- **Jennifer Lynn Kroll**
  jkroll@martinbonnett.com

- **Jeremy A Lieberman**
  disaacson@pomlaw.com

- **Susan Joan Martin**
  smartin@martinbonnett.com,tmahabir@martinbonnett.com,mblawfirm@aol.com

- **Francis P McConville**
  fmcconville@pomlaw.com,abarbosa@pomlaw.com

- **Robert V Prongay**
  rprongay@glancylaw.com,info@glancylaw.com

- **Leanne Heine Solish**
  lheine@glancylaw.com

- **Nicole Elizabeth Sornsin**
  nsornsin@swlaw.com,jthomes@swlaw.com,docket@swlaw.com

- **Kara M Wolke**
  kwolke@glancylaw.com

- **Blake Zollar**
  bzollar@cooley.com,bdanziger@cooley.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)